## Kipp's Estate.

*Trusts and trustees—Findings of fact—Investments—Accounting—Rehearing.*

1. Findings of fact by the orphans' court, based on sufficient and competent evidence, will not be reversed.

2. Where the orphans' court has reversed its original finding, after a rehearing involving a careful and exhaustive review of the facts, and there is no manifest error, the appellate court will not reverse the decree finally entered.

3. A trustee will not be surcharged for an investment in real estate found to be not a proper one, where it appears that the estate had suffered no loss from it, but that the property had increased in value, and might ultimately be sold at a profit.

4. A trustee will not be surcharged for a mortgage loan on a residence devised to a daughter of testator, where it appears that such investment was commendable and absolutely necessary for the best interest of the daughter and the trust estate.

5. In such case, it is immaterial that no interest had been paid on the loan, if it appears that the interest could be charged against

the daughter's share of the income from the trust estate, and collected therefrom.

Argued March 12, 1923. Appeal, No. 263, Jan. T., 1923, by the Scranton Trust Company, Guardian, from decree of O. C. Bradford Co., Dec. T., 1917, No. 5, dismissing exceptions to adjudication, in estate of George W. Kipp, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication. Before MAXWELL, P. J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed. Scranton Trust Co., guardian for grandchildren of testator, appealed.

*Error assigned*, inter alia, was decree, quoting it.

*Rodney A. Mercur*, for appellant.—The investments were improper: Hemphill's App., 18 Pa. 303; Nyce's Est., 5 W. & S. 254; Luken's App., 7 W. & S. 48; Worrell's App., 9 Pa. 508; Com. v. McConnell, 226 Pa. 244; Streater's Est., 250 Pa. 328; Handley's Est., 253 Pa. 119.

*John C. Ingham*, with him *John W. Codding*, for appellees.—The investments were proper: Pleasonton's Est., 232 Pa. 381; Partridge's Est., 241 Pa. 158; Lafferty's Est., 6 Pa. Dist. R. 22; Ritchey's Est., 17 Pa. Dist. R. 964, 966; Peale's Est., 17 Pa. Dist. R. 339; Boyle's Est., 20 Pa. Dist. R. 1119.

OPINION BY MR. JUSTICE FRAZER, April 30, 1923:
George W. Kipp died in 1911, leaving a will in which, after making specific devises, he directed his executors and trustees to set aside $10,000 for each of his grandchildren and use the income and such part of the principal as may be necessary for their care and education, any

balance to be paid them on their arrival at the age of twenty-one and finally provided that the remainder of his estate be invested "in such ways as may be consistent with safety, to collect promptly the interest or dividends therefrom and to pay the income or profits thereof" to his wife for life and after her death to his daughters and grandchildren in designated proportions, the corpus to finally vest in the heirs of the grandchildren. His wife and son-in-law, J. W. Hawes, and U. M. Fell were appointed executors and trustees and authorized "to sell any real estate and convey the same by proper indenture, also to receive, transfer, assign and sell any stocks, bonds or evidence of indebtedness, and to do all other acts necesssary for the due care and protection of the said estate," with further direction "that the compensation of my said executors shall be such as may be approved by the court having jurisdiction."

The personal estate of testator exceeded in value the sum of $400,000 of which the executors turned over to themselves, as trustees, $338,224.25, which amount was subsequently increased to $341,347.45. Testator had been actively engaged in the lumber business but in addition was pecuniarily interested in numerous other financial enterprises and among the assets of his estate were railroad and industrial stocks and bonds, the value of a number of them being extremely doubtful, and also personal notes to a considerable amount. The account of the trustees covered a period of time from May, 1913, to October, 1917, and involved the solution of many intricate and difficult questions, and, as found by the auditing judge, "called for an unusual and extraordinary service of a high character. They were not cases of the usual routine management of a trust of ordinary business. They called for great labor and responsibility and a high degree of ability and skill in order to save the estate from loss." The court also found the executors "did not attempt to realize on the investments [decedent had made] but turned them over to the trustees, which was

necessary in order to carry them along and realize upon the same to the best advantage and interest of the estate" and that "if these matters had been closed up by the executors, as is sometimes done, it would have resulted in a very serious and disastrous loss to the estate."

Fell took active charge of the business matters connected with the estate and spent considerable time in an endeavor to realize the greatest amount out of the various investments. Exceptions were filed to his account and considerable testimony taken at different times covering a period of more than two years, exceptants being allowed "the fullest latitude in the investigation...... both in filing of exceptions and in the cross-examination of U. M. Fell, trustee, in order to bring out all the facts that could possibly be material to the matter before the court." Ample proof that such latitude was allowed, at least in placing objections on record, appears by the fact that in all 151 exceptions were filed. These exceptions relate mainly to small items in the account which it is claimed were not properly accounted for or improperly credited to income rather than to principal, or vice versa. There was also complaint with respect to the manner the trustee managed the estate and as to investments, made by him from time to time without permission of the court, in securities such as would not be approved by the court. After hearing on the original exceptions and opinion filed, the court reopened the case and permitted the introduction of additional testimony and finally dismissed all exceptions. The present appeal was taken by the Scranton Trust Company, guardian for the minor children of George G. Johnston, grandchildren of testator. The record contains fifty assignments of error. Many of them are trivial in character, and, under the particular circumstances and in view of the extensive investigation of the facts and elaborate discussion of the findings made by the auditing judge, we dismiss all of these assignments, except those raising questions hereafter discussed, with the remark that the findings of

facts are supported by the testimony and there is nothing in the conclusions of law indicating an abuse of discretion on the part of the court below.

Appellants complain of a credit of $3,500 taken in the trustees' account for special services rendered in connection with the sale of the Albion Water Works. Decedent owned nine bonds of this company of the par value of $1,000 each, also three hundred and fourteen shares of the company's capital stock, inventoried at $10,200. The original investment in this stock was $30,000, making a total investment, including the bonds, of $39,000. There had been complaint as to the quality of water furnished by the company and the village of Albion had applied for permission to install a water system of its own. This action if carried out would have practically bankrupted the water company and, to avoid such loss, it was proposed to offer the plant to the village for $50,000, which sale, if consummated, would have paid fifty per cent on the outstanding bonds and left nothing to be applied on account of the capital stock. Had this proposition been carried out the estate would have realized but $4,500 on its investment. Fell decided not to accept the suggestion and immediately made arrangements to put down additional wells to obtain the proper quality of water, and, to lessen the loss to the estate, proceeded to buy outstanding bonds at various prices, ranging from fifty to one hundred per cent of their par value. He then entered into negotiations with the village to sell the plant and after considerable delay succeeded in having it become the purchaser for $100,000. He also realized the additional sum of $10,078.59 in settlement of various claims held by the company and, after paying all expenses, had sufficient funds left to pay in full the $39,000 investment and an additional small sum. For the extra services rendered in connection with this transaction he charged $3,500. Appellants do not contend that extra compensation should not be allowed or that the amount claimed is unreasonable. The sole contention is that accountant

took credit for this amount twice in his account, thus receiving $7,000, instead of $3,500. The auditing judge, in his original opinion, found the credit was, in fact, taken twice and surcharged accountant with $3,500. On petition the account was reopened and additional evidence taken and in a supplemental opinion the court found the item of $3,500 was not a duplicate credit and should be allowed to stand.

The account, as made up, as well as the evidence offered in its explanation, is confusing and not clearly stated and, at the request of several of the parties and for the information of the court, a separate account was prepared of the Albion Water Company matter, in which the credit of $3,500 appeared. Accountant contended, however, the $3,500 item was not, in fact, deducted from the transaction and that he received it but once as a credit in his general account. The confusion resulted from the fact that checks drawn at various times were apparently intended to cover different items of which no accurate record was kept. A second statement was prepared and all checks and vouchers produced in evidence at the rehearing showing the different payments made and the purposes for which the funds were used. This statement did not serve to remove all doubt concerning the various transactions and evidence was offered in explanation of it. Accountant testified positively that he did not take, in any of his accounts, more than one credit for the $3,500 and that this amount was paid him but once. While the method of accounting is one not to be commended and the confusion resulting therefrom seems inexcusable from a business point of view, yet, as the auditing judge reversed his original finding after a rehearing involving a careful and exhaustive review of the facts, we do not feel disposed to reverse his conclusion.

Another ground of complaint concerns investments made by the trustee from time to time. One of these relates to the purchase of the Bryant Lumber Plant lo-

cated at Towanda, Pennsylvania. This plant, consisting
of a planing mill and retail lumber business, had been
operated by George G. Johnston, father of the grandchil-
dren in whose behalf exceptions were filed, and another,
under the firm name of G. G. Johnston & Company. The
plant occupied a building owned by the Bryant estate,
which was about to sell the property, and the trustees,
being of opinion it would be to the advantage of the
children to purchase the property and provide their
father with a permanent business from which to realize
an income to support them, made the purchase. It is not
the contention of appellants that the trustees paid more
for the property than its fair market value, the sole ques-
tion being as to the propriety of the investment. The
court below found the investment was not a proper one
but that the estate had suffered no loss by the adventure,
in fact it had proven a success and the property had
largely increased in value since purchased and concluded
not to surcharge as the property might ultimately be sold
at a profit. In view of these findings, we are not inclined
to disturb the conclusion reached by the court below.

Objection is also made to an investment of $10,000 in
a mortgage on the homestead property devised to Mrs.
Johnston. The trustees were under the duty of provid-
ing proper care and education for the children of Mrs.
Johnston. The property in question had been used by
decedent and by Mrs. Johnston and her husband and
children as a home for many years previous to decedent's
death. Mrs. Johnston had become financially embar-
rassed by rendering her husband financial assistance in
the planing mill business and her creditors were pressing
for payment and threatening to sell the home. The trus-
tees, to preserve the home, decided to loan Mrs. Johnston
$10,000 secured by a mortgage on the property. The au-
diting judge found this to be commendable and ab-
solutely necessary for the best interest of Mrs. Johnston
and the estate. It is true interest had not been paid on
the mortgage, but, if the preserving of the home was a

proper act under the circumstances, the failure of Mrs. Johnston to pay interest would seem to be immaterial as she and the children were entitled to three-fourths of the income, and unpaid interest may be charged against her share of profits arising from the estate.

There are numerous other assignments in which the propriety of investments by the trustees are questioned, but we deem it unnecessary to discuss these separately. They were given careful consideration by the court below and we find no abuse of discretion in its conclusion.

The decree of the court below is affirmed at costs of appellant.